IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THE OHIO NATIONAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>DEBRA L. ANDERSON, and DOUGLAS ANDERSON,<br><br>Defendants. | 8:20-CV-29<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Defendants' Motions for Summary Judgment on their crossclaims against each other. Filing 32; Filing 35. Plaintiff, Ohio National Life Insurance Company ("ONLIC"), initiated this interpleader action pursuant to 28 U.S.C. § 1335 because Defendants and Cross-Claimants, Debra and Douglas Anderson, both assert they are solely entitled to the full proceeds due from a life insurance policy it provided. Filing 1. Defendants' competing claims for the death benefit are the basis of the cross-claims now at issue. Filing 11 at 2; Filing 14 at 3. As discussed below, the Court denies Debra Anderson's Motion for Summary Judgment and grants Douglas Anderson's motion.[1]

## I. BACKGROUND

Debra Anderson is the former spouse of Roger Anderson and a citizen of Nebraska. Filing 1 at 1-3; Filing 11 at 1. In 1979, ONLIC issued a life insurance policy on the life of Roger Anderson. Filing 1 at 2. The policy designated "Debbie Anderson, Wife" as the primary beneficiary of the policy and "Douglas Anderson, Brother" as the contingent beneficiary. Filing

---

[1] Also before the Court is Debra Anderson's motion for leave to submit a response to Douglas Anderson's reply brief. Filing 45. This motion is denied as the parties have completely briefed the questions of law at issue.

1

1-1 at 18. Roger applied for the policy in Nebraska and was a Nebraska resident. Filing 1-1 at 18. Douglas Anderson is a resident of Arkansas. Filing 1 at 1; Filing 14 at 1.

In 1988, Debra and Roger were divorced in Nebraska. Filing 11 at 6-10. Their property settlement agreement dated August 26, 1988 (Filing 11 at 11-15), was incorporated into the their divorce decree. Filing 11 at 9. In relevant parts, the settlement agreement and decree both provided that Roger "shall have as his sole and separate property, free and clear of any claim by [Debra] . . . The Ohio National Life Insurance policies on the life of [Roger] and [Debra]." Filing 11 at 7, 12. Roger died on December 9, 2018, still residing in Nebraska. Filing 1 at 3. No change of beneficiary for Roger's policy was ever received by ONLIC. Filing 1 at 3.

After ONLIC learned of Roger's death and made efforts to contact the policy beneficiary, Debra confirmed she and Roger had divorced but nevertheless submitted a claim for the proceeds due under the policy. Filing 1 at 3. ONLIC advised Debra that although she was designated as the primary beneficiary, her designation appeared to be revoked by operation of a Nebraska statute providing for automatic revocation of a former spouse's beneficiary designation upon divorce. Filing 1 at 3-4 (citing Neb. Rev. Stat. § 30-2333). Through her attorney, Debra corresponded with ONLIC and disputed whether her designation as the primary beneficiary was revoked by law. Filing 1 at 5-6. Fearing competing claims for the policy proceeds, ONLIC filed this interpleader action on January 17, 2020, admitting its liability for policy proceeds in the amount of $67,733.49 plus interest and bringing Debra and Douglas Anderson before the Court to litigate their claims. Filing 1 at 6. Pursuant to this Court's order, ONLIC deposited the policy proceeds and interest, less ONLIC's fees and costs for this action, with the Clerk of Court and is no longer a party to this action. Filing 31.

2

Debra and Douglas filed the pending cross-claims against each other, each asserting they are the rightful sole beneficiary under Roger's policy. Filing 11; Filing 14. They now move for summary judgment on their respective claims. Filing 32; Filing 35.

## II.  ANALYSIS

Neither party disputes the facts set forth above. See Filing 11; Filing 14. Now before the Court on the parties' Motions for Summary Judgment are the questions of whether Nebraska[2] law operates to automatically revoke Debra's designation as the primary beneficiary on Roger's policy, and whether the language of the divorce decree and incorporated settlement agreement operates as a waiver of her claim to the policy proceeds under Nebraska law. See Filing 33; Filing 36. The Court addresses these questions in turn.

### A.  Standard of Review

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in

---

[2] The parties do not dispute that Nebraska law governs the claims at issue. See Filing 11; Filing 14; Filing 33; Filing 36. The forum state's choice-of-law rules apply in an interpleader action. *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320-21 (8th Cir. 1991) ("[T]he federal interpleader statute is merely a special brand of diversity jurisdiction."). "A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself." *Gomez v. Gomez*, 303 Neb. 539, 544, 930 N.W.2d 515, 519 (2019). Because a Nebraska court granted the divorce, the Court will apply Nebraska law in interpreting its effect. The parties further appear to agree that Nebraska statutes govern Nebraska divorces and thus do not dispute that the Court should interpret the applicability of Neb. Rev. Stat. § 30-2333 to the situation presented herein. See Filing 33 at 4; Filing 36 at 4-5.

that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The moving party need not produce evidence showing "an absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (citing *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than 'the mere existence of *some* alleged factual dispute'" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

B. Revocation of Beneficiary Designation as a Matter of Law

4

The uncertainty that led ONLIC to file this interpleader action stemmed from the question of whether Neb. Rev. Stat. § 30-2333 applies to this case. Filing 1 at 6. In relevant part, the statue, which took effect August 24, 2017, provides:

> (d) Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage:
>
> (1) Revokes any revocable
>
> (A) disposition or appointment of property made by a divorced individual to his or her former spouse in a governing instrument [including an insurance policy] and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse;
>
> . . .
>
> (f) Provisions of a governing instrument are given effect as if the former spouse and relatives of the former spouse disclaimed all provisions revoked by this section or, in the case of a revoked nomination in a fiduciary or representative capacity, as if the former spouse and relatives of the divorced individual's former spouse died immediately before the divorce or annulment.

Neb. Rev. Stat. § 30-2333. Thus, if section 30-2333 applies to the present case, it would operate to revoke Debra's designation as the primary beneficiary of the policy. Douglas does not directly state whether the statute is applicable to the present case, though he suggests it may apply. Filing 42 ("[T]he statute and case law revoke the beneficiary designation of Debra."); *but see* Filing 36 at 4-5 (discussing section 30-2333 and retroactivity generally, but not stating whether the law applies here). Debra contends section 30-2333 does not apply to this case because it should not be given retroactive effect under Nebraska law. Filing 11 at 3-4. The Court agrees.

"In applying state law, [federal courts] are bound to apply the law of the state as articulated by the state's highest court." *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh*, 621 F.3d 697, 707 (8th Cir. 2010) (citation omitted). "When the state's highest court

has not spoken, [a federal court's] job is to predict how the state's high court would resolve the issue." *Id.* (citation omitted). In Nebraska, "[i]n noncriminal cases, statutes are generally not given retroactive effect unless the Legislature has clearly expressed an intention that the new statute is to be applied retroactively." *Millennium Sols., Inc. v. Davis*, 258 Neb. 293, 297, 603 N.W.2d 406, 409 (1999) (citing *Battle Creek St. Bank v. Haake*, 255 Neb. 666, 587 N.W.2d 83 (1998)); *see also Smith v. Mark Chrisman Trucking, Inc*., 285 Neb. 826, 832, 829 N.W.2d 717, 722 (2013) ("[A] legislative act operates only prospectively and not retrospectively unless the legislative intent and purpose that it should operate retrospectively are clearly disclosed. Statutes covering substantive matters in effect at the time of the transaction or event govern, not later enacted statutes." (citations omitted)). "In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense." *Allied Mut. Ins. Co. v. Action Elec. Co. Inc.*, 256 Neb. 691, 696, 593 N.W.2d 275, 279 (1999).

The Court finds nothing in the language of section 30-2333 to suggest the Legislature meant for it apply retroactively. *See* Neb. Rev. Stat. § 30-2333. Absent language evidencing such intent, the Nebraska Supreme Court would not give the statute retroactive effect. *See, e.g.*, *Millennium Sols.*, 258 Neb. at 297, 299-300, 603 N.W.2d at 409-10, 411 (holding "[a]ny contract clause allowing for predispute binding arbitration entered into before [the date the statute took effect] is void," in accordance with the pre-statute common law rule, where the court found "nothing in the plain language of [the statute changing the common law rule] which suggests that the Legislature intended that it operate retroactively"). Roger and Debra Anderson's divorce decree was entered in 1988, well before section 30-2333 took effect in 2017. Filing 11 at 6. Finding no indication in the language of the statute that the Nebraska Legislature intended for it to operate

on divorces that were already finalized, the Court finds section 30-2333 does not apply to the present case.

### C. The Effect of the Divorce Decree

The general rule in Nebraska is "that divorce does not affect a beneficiary designation in a life insurance policy." *Pinkard v. Confederation Life Ins. Co.*, 264 Neb. 312, 317, 647 N.W.2d 85, 89 (2002). However, parties to a divorce may waive their expectancy interests as designated beneficiaries as part of their divorce proceedings. *Strong v. Omaha Const. Indus. Pension Plan*, 270 Neb. 1, 11, 701 N.W.2d 320, 329 (2005) *abrogated on other grounds by Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 129 S. Ct. 865, 172 L. Ed. 2d 662 (2009). To determine if parties have relinquished their interests as policy beneficiaries, Nebraska courts look to the language of the judgment granting the divorce.

> [T]he focus of the inquiry should be upon the language of the dissolution decree and any agreement which sets forth the intentions of the parties concerning property rights. If the dissolution decree and any property settlement agreement incorporated therein manifest the parties' intent to relinquish all property rights, then such agreement should be given that effect. We make no distinction among IRA's, life insurance proceeds, or other types of annuities that designate the beneficiary in the event of the death of the payee. Each case must be evaluated based upon the facts indicating the parties' intent.

*Pinkard*, 246 Neb. at 318, 647 N.W.2d at 89. Debra asserts that her divorce decree and incorporated settlement agreement evidenced no intent to waive her interest as the primary beneficiary on Roger's life insurance policy. Filing 33 at 3-4. Douglas contends the language of the decree and settlement agreement demonstrates a waiver of any interest Debra had in the policy proceeds. Filing 36 at 11. The Court finds that as a matter of Nebraska law, the language of the divorce decree manifested Debra's intent to waive any claim to the policy death benefit, despite her continuing designation as the primary beneficiary.

7

In *Pinkard*, the Nebraska Supreme Court examined the effect of a divorce decree in relation to an ex-wife's asserted interest as the designated primary beneficiary of her deceased former spouse's workers' compensation annuity. 246 Neb. at 318, 647 N.W.2d at 89. The court looked to language in the decree which stated the deceased "would receive as his sole and separate property all right, title, and interest" in the annuity; that the benefits of the incorporated property settlement agreement "were in full and complete satisfaction of all claims that either party might have, including claims which might later arise in the event of one party's death"; and "[e]ach party waived all claims in property owned or later acquired by the other." *Id.* at 318-19, 647 N.W.2d at 89. The court "conclude[d] as a matter of law that [the ex-wife] relinquished her expectancy interest as the beneficiary," and the dissolution decree "terminated her interest as a beneficiary." *Id.* at 319, 647 N.W.2d at 90. Likewise, in *Strong*, the Nebraska Supreme Court found waiver of an ex-wife's interest as beneficiary of a retirement plan where the divorce decree "expressly stated not only that the retirement plan belonged to [the ex-husband], but that he would take it 'free and clear of any right, interest or claim' of [the ex-wife]." 270 Neb. at 13, 701 N.W.2d at 330. The court held such language "unambiguously" demonstrated the former spouse intended to waive her beneficiary interest in the plan's death benefit. *Id.*

Debra urges the Court to consider *Trueblood v. Roberts*, 15 Neb. App. 579, 732 N.W.2d 368 (Neb. Ct. App. 2007). Filing 33 at 3-4; Filing 41 at 3-4. In *Trueblood*, the appellate court addressed the beneficiary interest of a divorced spouse who remained primary beneficiary on the deceased former spouse's life insurance policy. 15 Neb. App. at 584-84, 732 N.W.2d at 372. The *Trueblood* court compared the divorce decree before it to those in *Strong* and *Pinkard* and determined that because its decree provided only that each spouse would "retain" the policies they

8

already separately owned and there was no language indicating relinquishment, there was no waiver and the beneficiary designation of the former spouse remained effective. *Id.*

Debra asserts her decree is like that in *Trueblood* because it contains "no waiver or global release language." Filing 41 at 4. This ignores, however, that Nebraska's highest court determined in *Strong* that decree language that a party would take property "*free and clear* of any right, interest or claim" was "unambiguously" indicative of relinquishment. 270 Neb. at 13, 701 N.W.2d at 330 (emphasis added); *see also Rice v. Webb*, 287 Neb. 712, 726, 844 N.W.2d 290, 300 (2014) (finding waiver where decree awarded former spouse "all interest . . . free from any claim of [the other spouse]"). Debra and Roger's divorce decree similarly provided the insurance policy would be Roger's "sole and separate property, *free and clear* of any claim by [Debra]." Filing 11 at 7 (emphasis added). Thus, there was language indicating both that Roger owned the policy and that his former spouse relinquished any claim to it, unlike in *Trueblood*, where there was no such language. *See* 15 Neb. App. at 584-84, 732 N.W.2d at 372. Therefore, the Court concludes that as a matter of Nebraska law, the divorce decree terminated Debra's beneficiary interest in Roger's policy, leaving the designated contingent beneficiary, Douglas Anderson, with the sole remaining claim to the proceeds.

### III. CONCLUSION

For the foregoing reasons, Debra Anderson's Motion for Summary Judgment, Filing 32, is denied, and Douglas Anderson's Motion for Summary Judgment, Filing 35, is granted. Debra Anderson's motion for leave to submit a response, Filing 45, is denied.

IT IS ORDERED:

1. Debra Anderson's Motion for Summary Judgment (Filing 32) is denied;
2. Debra Anderson's Motion for Leave (Filing 45) is denied;

3. Douglas Anderson's Motion for Summary Judgment ([Filing 35](#)) is granted;

4. The Clerk of Court shall release the remaining $65,469.39 of the previously deposited funds plus any interest accrued and prepare a check for that amount, payable to Douglas Anderson c/o Copple, Rockey & Schlecht P.C., L.L.O., P.O. Box 78, Norfolk, NE 68702;

5. Douglas Anderson is ordered to complete an Internal Revenue Service Form W-9 and submit the completed form via e-mail to the Clerk of Court;

6. Upon receipt of such Form W-9, the Clerk of Court shall mail the prepared check for said funds to Douglas Anderson c/o Copple, Rockey & Schlecht P.C., L.L.O., P.O. Box 78, Norfolk, NE 68702;

7. This case is terminated; and

8. A separate judgment will be entered.

Dated this 12th day of November, 2020.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge